### Foster Booth v. The State.

No. 4176.    Decided February 5, 1908.

**1.—Theft—Charge of Court.**

Where upon trial for theft, the refused special instruction was covered by the main charge, there was no error.

**2.—Same—Circumstantial Evidence—Charge of Court.**

Where upon trial for theft, the evidence was direct and positive, there was no error in refusing a special charge on the law of circumstantial evidence.

**3.—Same—Evidence—Declaration of Defendant—Intent.**

Where upon trial for theft, the State was permitted to introduce testimony that defendant asked witness to go to town and defendant would settle the matter, a week or so after the theft, there was no error.

**4.—Same—Self-Serving Declaration.**

Upon trial for theft there was no error in rejecting defendant's self-serving declaration to his wife, with reference to his motive in taking the alleged stolen property.

**5.—Same—Evidence—Letter—Motive.**

Upon trial for theft there was no error in admitting in evidence defendant's letter which he had written to the prosecutor's brother, after the theft, threatening him with a prosecution if he and prosecutor persisted in the prosecution against him.

Appeal from the County Court of Johnson. Tried below before the Hon. J. D. Goldsmith.

Appeal from a conviction of theft under the value of $50; penalty, ten days confinement in the county jail.

The opinion states the case.

*Odell & Johnson,* for appellant.—On question of defendant's declaration: Underhill Crim. Ev., pages 123–124; Shrivers v. State, 7 Texas Crim. App., 450; Epson v. State, 29 Texas Crim. App., 607; Rainey v. State, 20 Texas Crim. App., 455. On question of testimony of defendant's wife: Pilkinton v. State, 19 Texas, 214; Mask v. State, 34 Texas Crim. Rep., 136. On question of fraudulent intent: Thurman v. State, 33 Texas, 683.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of theft, and his punishment assessed at a fine of $50 and ten days confinement in the county jail.

Appellant asked the court to charge the jury, as follows: "You are instructed that before you can convict the defendant in this case you must first find that at the very time the defendant took said corn he took same without the consent of the owner; second, that he took same with the intent at the time to deprive the owner of the value of said corn; third, and that the defendant had the intent at the time of the taking to permanently appropriate the same to his own use and benefit, and if on any of these issues you have a reasonable doubt you will acquit defendant." This charge was covered in the main charge of the court.

Appellant asked a charge on circumstantial evidence. This is not a case of circumstantial evidence. The facts in the case show the following: Defendant was found in prosecuting witness' field stealing corn. Prosecuting witness, Clark, fired his gun off when he found appellant taking corn in the night-time, and immediately the defendant walked up to prosecuting witness, saying that he had intended to tell him about taking the corn, and pay him for it; that he had taken corn on one or more occasions prior to this without telling him, but he did intend subsequently to see him and pay for same. This is substantially the defendant's statement at the time. At the time the gun fired defendant had about twenty-five ears of the witness Clark's corn in a sack.

Bill of exceptions No. 1 shows the following: While the witness, James Clark, was on the stand the State propounded to him the following question: "Did you have a conversation with the defendant, Foster Booth, after the taking of the corn, in which he said anything to you about pleading guilty in this case?" And to which question the witness answered as follows: "Yes, I had a conversation with him a week or so after the taking of the corn, in which Foster Booth said to me that he wanted me to go down to Cleburne and he would settle the matter off." Appellant objected to this on the ground that the testimony was wholly immaterial, and threw no light upon the issue in the case as to whether or not the defendant had a fraudulent intent at the time of the taking of the corn to appropriate it to his own use and deprive the owner of the value thereof, and that it was but proving a proposition of the defendant to settle the matter off in some way, and his statement to that effect

would not show, or tend to show, any guilt or guilty intent upon his part, and was in the nature of an offer to compromise. It may be true, as appellant insists, it shows an effort to compromise, but the converse view is suggested by the witness' statement also. This being true, the testimony is admissible. Previous or subsequent declarations to the' commission of a crime going to show guilt are always admissible, if made by the appellant himself. Of course, if the language used is susceptible of construction showing innocence, appellant is entitled by argument and cross-examination to place that construction upon it, but this would not deprive the State of the right to prove same.

Bill of exceptions No. 2 shows that defendant introduced his wife as a witness in his own behalf, and offered to show that on Sunday morning upon which he went down into the field and got some corn out of the field of Mr. Clark (the prosecuting witness in this case), that he (defendant) on said morning, and just before he started for the house down into the field to get the corn, had a sack in his hand and stated to his son, a boy about 12 years old, in the presence of his wife (the witness) that he (defendant) was going down in Mr. Clark's field to get a feed of corn; that he was out of corn, and that he would go down there and get a feed for the hogs; and when he saw Mr. Clark he would tell him of his having gotten the corn and pay him for it. That this conversation occurred a short while before appellant was arrested for taking the corn that he is prosecuted for taking in this case. The testimony proffered is clearly self-serving and inadmissible, and the court did not err in so ruling.

While the defendant was on the stand, the State, on cross-examination, over appellant's objection, made him admit that he had written the following letter, a short while before this trial, but after the alleged theft, to the prosecutor's brother:

"Clifton, Texas, 2–13–06.

"Mr. Geo. Clark.

"Dear sir: I suppose you and Jim are intending to do all you can against me when I come to trial on that corn case. I just want to tell you that Jim done his best as far as I know to help me out, and I believe he realizes the condition I was in, for I guess he has been in some pretty tight places himself, but you done all you could to sink me deeper. Now, George, I am not in the habit of turning a man in, but if things go on·as they look like they are apt to I will certainly turn you up for selling whisky, and to a minor besides, which makes two cases instead of one. Now, there is no use in you trying to get around this, for I have got all the proof I want. If you will look on the express book, about February 8, '06, you will find that you signed for ½ gallon of whisky from H. Brown & Co., of Ft. Worth, and if you remember, you turned around and accepted pay for the same, and if you just think for a moment one of the boys that you let have it is under the age of 21 years, which makes two cases against you.

"I hate to do anything like this, but if everything goes on like it is I will certainly stick you. The best way out of all this you probably know.

I hate to force a neighbor boy into anything, but when I am forced to do a thing I can do it with as good grace as anybody. Besides, I have got to act under my attorney's advice. He told me to find out if you would do a little thing like that, and I did. Now, if you'and Jim will give me a square deal I'll give you one. If you don't want to, all right. It will cost you fifty times as much to get out as it will me. Let me hear from you soon as court meets right away.

"Respectfully,

"F. A. BOOTH."

This testimony was admissible. It clearly indicates that appellant was trying to prevent George Clark (brother of the prosecuting witness) from testifying against him in this case.

There is no error in this record, and the judgment is affirmed.

*Affirmed.*