HENRY DOGGETT v. THE STATE.

No. 5501. Decided October 29, 1919.

*Aggravated Assault—Husband and Wife—Evidence—Grand Jury.*

Where, upon trial of aggravated assault, the State was permitted on cross-examination of defendant's wife to lay a predicate to impeach her, by asking questions as to her testimony·before the grand jury which she answered over the objections of the defendant, and the State was then permitted to introduce as a witness a member of the grand jury who testified to a statement of defendant's wife before the grand jury which was contradictory to some extent, at least, of her testimony before the trial jury, the

same was reversible error. Following Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328, and other cases.

Appeal from the District Court of Walker. Tried below before the Hon. John S. Prince.

Appeal from a conviction of aggravated assault; penalty a fine of three hundred dollars and sixty days confinement in the county jail.

The opinion states the case.

*Dean & Humphrey*, for appellant.—Cited cases in opinion.

*E. A. Berry*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for aggravated assault, the punishment being assessed at a fine of $300 and sixty days imprisonment in the county jail, under an indictment charging assault with intent to murder.

Substantially, the evidence shows defendant and Williams, the alleged assaulted party, lived neighbors and had been friends. The State's theory is that on the day of and some hours previous to the shooting appellant had gone to the wife of Williams and made indecent proposals, which she rejected, whereupon he struck her with his fist three times and a time or two with a shotgun inflicting bruises. Later she informed her husband, who immediately went to his home, secured a gun and went to appellant's residence. As he approached the residence, the State's theory is that appellant ordered him to stop when he was something like sixty or seventy yards of his house, and not heeding the request or command, appellant went in the house, got a shotgun and fired once from a window. The gun was loaded with what the witnesses denominate squirrel shot, which struck him, but the injury was not serious. Williams' wife had followed him, and, immediately after the shooting, got hold of him and took him away. The evidence is made certain that Williams carried his gun with him and was mad and enraged, and went for the purpose of inflicting injury, if not death, on account of the insults by appellant to his wife. Appellant's theory of the case, which is supported by the testimony of himself and his wife, was that as Williams approached he remarked to him that he was going to kill him, and under his testimony he conceived the idea it was because of the fact that he had caught Joe Grant and Williams' wife in the woods in a compromising attitude. When Williams announced his purpose appellant stepped in his house, got his shotgun and returned to the gallery, and as Williams approached fired one shot. Williams undertook to fire but his gun snapped and the shell was not exploded. Williams says this was after he was shot, while appellant's testimony shows

it was before he fired. This is a sufficient statement of the evidence we think to disclose the nature of the case.

There are several bills of exception reserved to the ruling of the court, one, at least, of which will require a reversal of the judgment, Appellant's wife was carried before the grand jury and testified before that body. Upon the trial of the case it was contended by the State that her testimony before the grand jury varied from that before the petit jury. The State laid a predicate to impeach her by asking questions as to her testimony before the grand jury. She was asked and answered several questions. This was over various objections of the defendant. A witness by the name of Parish was placed upon the stand, who was a member of the grand jury, and permitted to testify to a statement of appellant's wife before the grand jury contradictory, to some extent at least, of her testimony before the petit jury. This is also shown by proper bill and sundry exceptions reserved. The court was in error in permitting this procedure. There are quite a number of cases that might be cited, but it is deemed unnecessary to collate many of them. See Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328, which case is in point. On page 330 of that volume this quotation is made. The wife after testifying the opinion recites: "On her cross-examination, the State was permitted to lay a predicate to impeach her as to her testimony given before the grand jury, which testimony is claimed to be contradictory of the testimony she gave before the jury. Objections were urged both to the predicate and the subsequently introduced evidence given before the jury. The bill recites and shows that while her husband was in jail she was subpoenaed and carried before the grand jury as a witness, and gave testimony which the State thought to be contradictory before the petit jury. Upon her examination in regard to the predicate, she stated she did not recollect certain references to the testimony before the grand jury, not specifically denying anything. Many objections are urged to this testimony which, we think, were well taken. The wife cannot be used as a witness against her husband. She was carried before the grand jury, as the bill recites, under process and there testified, and the evidence was used on the final trial against her husband under the guise of impeachment. That this testimony could not have been used against the appellant as original testimony is not to be questioned; yet it is indirectly used against him as impeaching testimony of the wife. The evidence of the wife cannot be used against the husband, except in cases where the offense is by the husband against the wife, which means personal violence against the wife. And she cannot be used as a witness against her husband, even though objection is not urged at the time. This is not an open question in Texas." Then follows quite a number of cases which will be found collated in the opinion from which this

extract is taken. After reciting these cases the opinion continues: "The case of Woodall, *supra*, (58 Texas Crim. Rep., 513) is directly in point, where the testimony of the wife was used against the defendant, when that testimony had been delivered before the grand jury. The introduction of this evidence for any purpose was inadmissible and injuriously so, and is not authorized. She was before the grand jury without the knowledge or consent of appellant; he being in jail at the time." It does not appear that appellant was in jail in the instant case, but that would make no difference. She was carried before the grand jury and made a witness before that body, and, of course, the defendant was not and could not be present. Woodall's case, above cited, is in harmony with the Johnson case, *supra*, and directly in point here. For this error the judgment will be reversed and the cause remanded.

*Reversed and remanded.*