JOHN L. WILSON V. THE STATE.

No. 8265.   Decided March 26, 1924.

Rehearing denied November 7, 1924.

Possession of Intoxicating Liquor—Evidence—Wife as Witness—Cross-Examination.

Where the wife of accused, is introduced by him, and testifies in his behalf, it is proper to permit the state to impeach her by proving contradictory statements made to officer before the trial. The fact that such contradictory statements made by her are incriminatory of her husband, does not alter this rule. See cases cited in opinion.

Appeal from the Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippin, Judge.

Appeal from a conviction of possessing intoxicating liquor for purpose of sale; penalty, three years confinement in the State penitentiary.

*John F. Fagan & Jed. C. Adams,* for appellant.

*Shelby Cox,* District Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in Criminal District Court No. 2, of Dallas County of possessing intoxicating liquor for the purpose of sale, and his punishment fixed at three years in the penitentiary. ·

There are a number of bills of exception in the record which in substance present the two propositions that are briefed by appellant. As stated the charge was possession of liquor for purpose of sale, and the two propositions involved were, first, the possession of intoxicating liquor, and, second, that such possession was for the purpose of sale, and any testimony pertinent to either issue would be admissible. The State used three witnesses; appellant, one. Officers who went to appellant's place on April 10, 1923, searched his house and garage and found in a dresser drawer in the residence three quart bottles of bonded whisky unopened, one quart bottle of red whisky, and one quart bottle about three-fourths full; in the kitchen of the residence were found other whisky bottles, quarts and pints, which were empty. The garage was locked but the key was obtained and in it were found twenty-seven quart bottles of bonded whisky, some of same being in what the officers called illegal transportation sacks,—burlap sacks holding six quart bottles to a sack: There were also fifty brown sacks each of which was capable of holding a quart bottle. Appellant was not at home when the officers made this raid but his wife was, and presently while the

officers were there appellant came in a Ford coupe. This car was searched and no liquor found in it, but in the back end of same were found the same kind of burlap sacks and brown paper sacks which were in the garage. Appellant was placed in jail. On his trial, in addition to the above, it was in testimony that on the 31st of March, ten days before the arrest of appellant, an official watched said premises and about 10:30 or 11:00 o'clock P. M. appellant drove into his driveway in the same Ford coupe as above mentioned and went to the rear of the house, got out and went in, leaving the lights of the car burning. In a short time he came back carrying several quart bottles with labels on them and in appearance just like the quart bottles of whisky found on the premises. These he put in the back of his car and drove away. In about half an hour he came back, drove in the yard, turned off the lights of the car and went around to the front of the house. The officer watching took his station near a window whose shade was raised a few inches affording him a view of the same room in which on April 10th the officers found the bottles of whisky in the dresser above mentioned. In about fifteen minutes after this a large car drove up in front of the house, a man got out, went to the front door, knocked and was admitted. The officer then saw appellant and a man go into the room where the dresser was, talk for a minute and then saw appellant go to the dresser, open the drawer, get out a quart bottle filled with liquid that looked like whisky, put it in a sack and hand it to the other man who gave appellant some money. Appellant accompanied the other man to the door and the latter got into his car and drove rapidly away.

This evidence is so plain both as to the possession of the liquor and as to the purpose of its possession that we deem an analysis of it unnecessary in order to show that it establishes both constituent elements of the offense.

Appellant placed his wife on the witness stand. She testified that the liquor found on the premises belonged to a man named Miles who brought it there some time during March; that Miles gave some of it to her husband for his personal use. She said that appellant had no interest in the whisky; that it did not belong to him. On cross-examination she testified that she had a conversation with the officers at the time they seized the whisky. We quote from her testimony at this point:

"I did not tell them that the whisky belonged to Miles, I don't think; I don't think they ever questioned me. I did not tell them that the whisky belonged to Lane Wilson, my husband. Just myself and the officers were present at the time I had the conversation with them. I did not tell them who the whisky belonged to."

In its rebuttal, the State proved by the officers that on the occasion of their raid Mrs. Wilson told them the whisky belonged to her hus-

band.  It is insisted that this testimony from the officers was erroneous on the ground that it had not been gone into on direct examination of appellant's wife, and was, therefore, not a subject for her impeachment.  Johnson v. State, 66 Texas Crim. Rep., 590; Woodall v. State, 58 Texas Crim. Rep., 513; Doggett v. State, 89 Texas Crim. Rep., 98; Turner v. State, 89 Texas Crim. Rep., 615, and Watt v. State, 90 Texas Crim. Rep., 450, are cited by appellant.  These cases reflect attempts to use for purposes of impeachment statements of the wife made by her in the first instance when called on by some one in authority to give evidence against her husband.  The fact that our authorities are not in harmony upon that question, is adverted to in Rogers v. State, 91 Texas Crim. Rep., 44.  In that connection Hicks v. State, 27 Texas Crim. App., 273, an opinion by Judge White, holds admissible to impeach the wife, statements made by her while under arrest for the very crime for which her husband was then on trial. However, we do not think the principle involved in the authorities cited by appellant, if sound, to be applicable and therefore forego discussion.  In this case appellant's wife was not under arrest or before a grand jury or in court.  She was in no sense compelled to make the statements testified to, and that her statements were entirely of a voluntary character appears from her quoted testimony above.  That statements are made to officers does not suffice to reject them.  Red v. State, 39 Texas Crim. Rep., 422; Hicks v. State, No. 7966, opinion rendered February 20, 1924.  It has been the rule in this State for more than a half century that the wife when placed on the witness stand as a witness for her husband may be rigidly cross-examined as to all matters pertinent to the testimony given by her in chief, and that she may be impeached by proof of statements at variance with her direct testimony.  In Creamer v. State, 34 Texas, 175, an opinion rendered when our Supreme Court had jurisdiction of criminal matters, it was said:

"We are therefore of opinion that whenever a husband or wife is put upon the witness stand to testify in behalf of the other, he or she so testifying should be subjected to as rigid a cross-examination as any other witness, with the exception only that he or she could not be examined in regard to anything against the other about which there had been no testimony on the examination in chief.  This we believe is the true intent and meaning of the statute, and the only one that can reconcile the law with the principles of truth and justice."

In the case at bar Mrs. Wilson testified to the ownership of the liquor found in appellant's garage and residence.  She said it belonged to a man named Miles, that it did not belong to appellant and he had no interest in it.  This was material and if true destroyed the State's case.  It seems too clear to need discussion that her former statement that the liquor belonged to her husband if made, was not

new matter brought out by the State but was directly pertinent to and contradictory of, her testimony as directly given on this trial, and proof thereof was admissible, for purposes of impeachment, to which purpose it was restricted in the charge in this case. Branch's Ann. P. C., Sec. 153, for collated authorities.

No error appearing in the record, the judgment will be affirmed.

*Affirmed.*