BOYD v. STATE. (No. 11720.)

Court of Criminal Appeals of Texas. Jan. 30, 1929.

Rehearing Denied Nov. 27, 1929.

734

See also 13 S.W.(2d) 104.

Donald & Donald, of Bowie, Taylor, Muse & Taylor, of Wichita Falls, Loftin & Hall, of Henrietta, and Benson & Benson, of Bowie, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

CHRISTIAN, J. The offense is making a false entry in a book of a state bank; the punishment, confinement in the penitentiary for six years.

Appellant was cashier of the First State Bank of Bellevue, Tex. On June 29, 1927, he prepared a deposit slip showing that he had deposited the sum of $5,000 in said bank. On the same date his special account was credited with said sum. Thereafter appellant withdrew approximately $3,000 from the bank, such amount being charged to his special account. A bank examiner testified that appellant told him that he had drawn a draft on one E. H. Edwards in the sum of $5,000 with certain oil leases attached and sent same to a Fort Worth bank, and that the credit of $5,000 shown in his special account represented the amount of the draft. Appellant also stated to the examiner, according to the state's testimony, that the draft was returned unpaid. The testimony of the state's witnesses tended to show that appellant had not drawn the draft and that there was no basis for the entry in question. An employee of the Fort Worth bank named by appellant testified that drafts drawn on his bank passed through his hands, and that the draft described by appellant had not been received by him. Several days after the bank examiner found the credit in question in appellant's account, said account was charged with the sum of $5,000. However, the money theretofore withdrawn by appellant was not replaced. Appellant was unable to produce the draft claimed by him to have been returned unpaid. It was customary to enter drafts in transit in the remittance book. No record of the draft in question was made therein.

Bill of exception No. 1 discloses that the state introduced in evidence a sheet of the individual ledger containing appellant's special account. Appellant objected to the introduction of the ledger sheet on many grounds, chief of which was that the individual ledger had not been proven to be the bank's book. The court qualified the bill, but appellant having excepted, the qualification cannot be considered. We note from the bill that the bank examiner testified that he had seen the individual ledger referred to in First State Bank of Bellevue, and that said book had been delivered to him by an employee of said bank. He further testified that he called said book the individual ledger. We note that the witness in question was not the only state's witness testifying to the nature of said book. The bookkeeper of the bank testified that said book belonged to the First State Bank of Bellevue and was in use by said bank in June, 1927. He referred to the book as the individual ledger and described the special account of appellant which was contained therein. We are constrained to hold that the evidence is sufficient to justify the conclusion that the book in question was the individual ledger of First State Bank of Bellevue.

As shown by bill of exception No. 3, a state's witness testified on cross-examination that there was a direct connection between the alleged false entry and a $3,000 shortage he had found in the bank. Appellant did not request the court to exclude the answer of the witness. On redirect examination the witness testified that there was a shortage of $3,000 in the bank. Appellant objected to the question and answer on the ground that it was immaterial and irrelevant. The objection is not supported and appears only as a ground of objection. Hence as against the objection made the bill is insufficient to manifest reversible error. It may be added that as bearing on appellant's intent to defraud the bank, the testimony complained of may have been relevant and material. It was charged in the indictment that the entry was made with the purpose and intent of defrauding the bank.

Bill of exception No. 4 is concerned with the action of the court in permitting the state to introduce in evidence a certified copy of the charter of the bank, in the absence of said copy having been filed among the papers of the case, in compliance with the provisions of article 3726, Revised Statutes 1925. While said article provides that instruments of writing which are permitted or required by law to be recorded in the office of the county clerk shall be filed among the papers of a suit at least three days before the commencement of the trial and notice given thereof to the opposite party or his attorney of record, we note that article 381, Revised Civil Statutes 1925, only requires that a certified copy of a bank charter be filed in the office of the county clerk of the county in which the corporation may be located. Article 3722, Rev. St. 1925, provides, among other things, that the banking commissioner shall furnish to any person applying for the same a copy of any paper, document, or record in his office with a certificate under seal certifying to any fact contained in said paper, document, or record. It is further provided in said article that said paper, document, or record shall be received in evidence in all cases in which the originals would be evi-

dence. A bank charter not being required to be recorded in the office of the county clerk, its use in evidence is not controlled by the provisions of article 3726, supra. On the contrary, the provisions of article 3722, supra, control.

■ While a witness for the state was testifying on cross-examination, he was asked by appellant if he did not ship some liquor to Seebold Hotel in Brownsville. It is not shown by the bill of exception (No. 5) that the witness was under complaint or that he had ever been indicted on a charge of transporting or selling intoxicating liquor. Hence the action of the court in refusing appellant the right to require the witness to answer the question was not error. Mr. Branch, in his Annotated Penal Code, § 168, lays down the rule as follows: "Proof of mere accusations against, or evidence of particular acts of misconduct is not admissible to affect the credibility of a witness. Defendant or any other witness can only be impeached as to other offenses by showing that he has been legally charged with a felony or with a misdemeanor imputing moral turpitude."

■ It appears from bill of exception No. 9 that after the private prosecutor had read the first part of the court's charge relating to the admonition to the jury that they should not consider appellant's failure to testify or discuss or allude to it, the court stopped the reading of said charge and requested that private prosecutor proceed no further. Whereupon appellant's counsel interposed an objection to the acts of the private prosecutor for the reason that he had alluded in argument to appellant's failure to testify, and further an objection to the action of the court in stopping counsel from reading said charge. The court instructed the jury not to consider the acts of private prosecutor in reading from said charge or the acts of the court in stopping him. In Goldsberry v. State, 92 Tex. Cr. R. 108, 242 S. W. 221, we held that the reading of the charge did not constitute a violation of the statute.

■ The court charged the jury, in substance, that causing another to make an entry is equivalent to making the entry in person. Under the facts, the giving of the charge does not constitute error. Article 68, Pen. Code 1925, declares in substance that one is a principal who employs a person who cannot be punished to commit an offense. The bookkeeper of the bank testified that he did not know whether he or appellant made the entry in question. It was undisputed that appellant prepared the deposit slip from which the entry was made. There is nothing to indicate that the bookkeeper was guilty of any violation of the law in making the entry on the individual ledger. If appellant did not make the entry on the individual ledger in person, he procured an innocent agent to make said entry. In such event, ap-

pellant was a principal. The court merely submitted the terms of the statute.

The court instructed the jury that appellant could not be convicted if he drew a draft on E. H. Edwards for $5,000, and deposited same in the First State Bank of Bellevue, Tex., to his own credit, and believed at the time he drew said draft that it would be paid. Appellant requested the court to charge the jury that if he drew the draft in question and deposited same in the bank they would acquit him. The court correctly refused to give the requested instruction. If the placing of the draft in the bank was a mere pretext to enable the false entry to be made, appellant was in no position to contend that the entry was supported by an actual transaction. If appellant had no reason to believe that the draft would be paid, he resorted to a false pretext to enable him to make the entry. In Coffin v. United States, 162 U. S. 664, 16 S. Ct. 943, 40 L. Ed. 1109, the Supreme Court of the United States was concerned with a similar question. In that case the appellant had placed fraudulent notes in the bank and received credit therefor. While recognizing the rule to be that the making of a false entry is a concrete offense which is not committed where the transaction entered actually took place and is entered exactly as it occurred, the court expressed the view that if the notes in question had been originally given to the bank as a mere pretext to enable the false entry to be made, no actual transaction supported the entry.

Other bills of exception found in the record have not been discussed. We have carefully examined all of appellant's contentions and fail to find reversible error.

The judgment is affirmed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

HAWKINS, J. ■ The state's case was predicated on an alleged false entry made by appellant which passed to his credit the sum of $5,000. It was appellant's defense that the entry was legitimate and authorized because he had drawn a draft on E. H. Edwards for said amount. Upon this issue the court instructed the jury as follows: "If you believe from the evidence that on June 29th, 1927, the defendant drew a draft on E. H. Edwards for $5000.00 and deposited same in the First State Bank of Bellevue, Texas, to his own credit, and the defendant at that time believed, or had no reason to disbelieve, that said draft would be paid, or if you have a reasonable doubt thereof, then you will acquit the defendant." Although certain written objections to the charge were made, none

was urged to the paragraph just quoted; however, a special charge was requested and refused which would have told the jury if they found that appellant drew a draft on E. H. Edwards for $5,000 and attached thereto some oil leases, and that said draft was deposited in the bank to appellant's credit, they should acquit. Appellant predicates his motion for rehearing largely on the proposition that the court committed error in giving the charge quoted and in refusing the special charge requested. So far as criticism of the charge given is concerned, it seems sufficient to say that no objection thereto having been urged as required by articles 658 and 666, Code Cr. Proc. 1925, appellant is in no position now to complain. See authorities under note 60, art. 666, Code Cr. Proc., Vernon's Cr. Statutes 1925 vol. 2. The requested charge is in conflict with that given, in that the requested charge would have authorized an acquittal if appellant drew the draft referred to, although it may have been a sham intended to furnish an ostensible basis for the entry which reflected no real transaction. Although it was the state's claim that no such draft was ever drawn on Edwards, such contention would in no way estop it from asserting that if such a draft was drawn it reflected a sham transaction, which did not relieve the entry of falsity.

In the motion for rehearing our attention is directed to the case of United States v. Warn (D. C.) 295 F. 328, 330. The announcement therein appears to be against appellant rather than in his favor, and expressions are used which are in harmony with those found in Coffin v. United States, 162 U. S. 664, 16 S. Ct. 943, 40 L. Ed. 1109, referred to in our original opinion. The opinion in Warn's Case might not be binding upon the Supreme Court of the United States, nor upon this court, but to our minds the logic is unanswerable. We quote: "While one cannot be charged with making a false entry, where the transaction, though unauthorized or unlawful or in some respects fraudulent, is correctly entered or reported, an entry or report, made by one knowing the facts, of a note or other instrument as real or genuine, which in truth is forged or spurious, or a mere sham would fall within the denunciation of the statute. Here the gist of the charge is that the note, entered as alleged, was 'a mere dummy,' etc., and the whole question of the sufficiency of the charge turns upon the meaning to be attached to the word 'dummy.' However inelegant the term, it has undoubtedly come into common use. We speak and hear of 'dummy' directors of a corporation, 'dummy' entrymen in connection with public land frauds, 'dummy' contracts, etc. In its general significance it is perhaps more comprehensive and less distinctive in meaning than other words which might be named as its synonyms. 'Sham' is possibly the closest

equivalent. It implies a make-believe, a pretended, a feigned something—an imitation, a counterfeit in a general sense, but not necessarily fictitious or forged. *If, as I take the term 'dummy' here to mean, the Streeter note was a mere sham, a mere make-believe note, and the defendant knew such to be its character, he could not rightfully carry it as a real asset of the bank, and entries purporting to exhibit it as such would be false."* The italicizing of the last sentence is ours. It appears particularly applicable to the instant case. If the Edwards' draft was a sham, and appellant knew it, he had no right to pass the amount of it to his credit, and an entry made for such purpose would be false.

Appellant complains that in considering his bill of exception No. 4 we took no notice of an objection urged to admission of a certified copy of the bank's charter on the ground that "the authenticity of the execution of the Charter has not been shown, and no proper predicate has been laid for the introduction of said charter." Article 1313, Rev. St. 1925, after providing under what circumstances the secretary of state shall receive, file, and record charters, further reads: "The charter shall thereupon be filed in the office of the Secretary of State, who shall record the same at length in a book to be kept for that purpose, and retain the original on file in his office. A copy of the charter, or of the record thereof, certified under the great seal of the State, *shall be evidence of the creation of the corporation."* There seems to have been exact compliance with the statute just quoted, and the objection urged is without merit.

On account of appellant's insistence that the evidence should be held insufficient to support the conviction, we have again examined the facts. We think this court would be unauthorized to hold that the evidence did not support the finding of the jury.

The motion for rehearing is overruled.