BILL MEADOW, ALIAS SLIM MEADOW v. THE STATE.

No. 14317. Delivered October 21, 1931.

The opinion states the case.

*Thomas S. Christopher,* of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of chickens; the punishment, confinement in the penitentiary for eighteen months.

As disclosed by bill of exception No. 1, appellant filed his application for a change of venue, wherein it was alleged that there existed in Dawson county so great a prejudice against appellant that he could not obtain a fair and impartial trial. When the state filed its controverting affidavit, the court called upon appellant to offer his testimony in support of the application. Instead of introducing his proof, appellant's attorney requested the court that the hearing on the application be deferred for a reasonable time in order that witnesses might be summoned. In connection with his request, appellant's attorney testified that he had not been employed in the case until 8 o'clock on the morning of the trial and that he had immediately prepared an application for change of venue and secured the affidavit of two credible persons in support of said application. The court's qualification appended to the bill of exception reads as follows: "When appellant's application for change of venue was presented at 9 o'clock a. m. the district attorney stated that he desired to file controverting affidavits, and the court then asked counsel for appellant if they were ready to proceed. They stated they were not as they would have to see about witnesses, that they had not summoned witnesses and did not state the name of a single witness whom they expected to procure at any time to testify in behalf of the application. The court, the district attorney having stated he would file a controverting affidavit, waited on him to prepare same until about 11 o'clock a. m. At that time counsel for the defendant were in the same attitude as they were at 9 o'clock and when the court told them that if that was their attitude in the matter that their motion would have to be overruled, they stated they had no idea that same would be overruled, and when told by the court he was not then overruling it but merely stating to them to proceed they again reiterated they had no witnesses and would have to see about procuring them, still giving no names of witnesses by whom they expected to prove anything, but in fact, as it appeared to the court, merely stating that if the court would wait on them they would ascertain whether they could find anybody who would testify in behalf of their application, whereupon the court overruled same."

Appellant did not except to the qualification, and we are bound to consider it in appraising the bill of exception. If we comprehend the bill as qualified, appellant did not know of any witnesses who would support the allegation of prejudice. He desired, in the event the court accorded him the opportunity, to make an investigation in order to determine whether there were witnesses in the county who would testify in support

of his application. Appellant at no time made application for witnesses, although he had two hours from the time of presenting his application until it was considered in which to request that process be issued. As the matter is presented, we are constrained to hold that the bill of exception fails to reflect error.

Bill of exception No. 2 presents the following occurrence. In his argument to the jury the district attorney used language as follows: "I want to discuss with you another portion of the court's charge wherein he instructs you that there are matters which you must not consider in any way; you must not mention that you must not talk, that you must not allude to or even think of."

The qualification appended to the bill of exception shows that after making the foregoing remarks the district attorney read that part of the court's charge in which the jury were instructed that they could not consider the failure of the defendant to testify. It is recited in the qualification that the district attorney made no comments whatever upon the charge. The opinion is expressed that the trial court was warranted in overruling appellant's objection. The mere reading of the charge of the court did not constitute an allusion or reference to the failure of appellant to testify. In Wimberly v. State, 109 Texas Crim. Rep., 581, 6 S. W. (2d) 120, it appears that the district attorney, in his closing argument, used language as follows: "The defendant in a criminal case has every right guaranteed to him and is given the benefit of the presumption of innocence and the reasonable doubt; he is not required, and cannot be required, and cannot be compelled, to take the witness stand and testify as a witness in his own behalf."

In holding that the language of the district attorney, in the connection in which he used it, was not a reference to the failure of the appellant to testify, Judge Lattimore used language as follows: "It is customary for trial courts to instruct the jury that the accused does not have to testify and that his failure to testify cannot be taken as a circumstance against him, and it has been held that the attorney for the state, in his argument who reads that portion of the court's charge, and makes no comment upon it, commits no reversible error. Unless something should appear in the statement made from which this court might conclude that the language used was such as to induce the jury to consider against the accused the fact that he did not testify, we would not be inclined to hold such action reversible error. The statement made by the district attorney in this instance was in almost the exact language used by the court in the charge, and it does not appear to have been made with any sort of purpose of calling the jury's attention to the fact, or in any wise using it against the accused. We do not believe the action amounted to more than a casual reference."

See also McPhail v. State, 114 Texas Crim. Rep., 635, 26 S. W.

(2d) 218; Boyd v. State, 114 Texas Crim. Rep., 160, 21 S. W. (2d) 733.

As shown by bill of exception No. 3, the district attorney in his closing argument to the jury used language as follows: "I want to tell you there is positive testimony corroborating the testimony of Jack Fancher and that his testimony is legitimately before this jury for if this court had not known that there was positive testimony corroborating the witness Fancher he would have given you a charge on circumstantial evidence, and he did not give you a charge on circumstantial evidence, not one single line in this charge regarding circumstantial evidence; which shows that the court knew there was positive evidence corroborating the witness."

Appellant objected to this argument on the ground that it left the impression upon the minds of the jury that the trial judge believed and knew that there was positive testimony corroborating the accomplice witness. The court overruled the objection, and declined to instruct the jury not to consider the statement. Appellant offered no written charge withdrawing the remarks. The argument was not proper. The accomplice witness testified that he was with appellant when he stole the chickens, and that he and appellant went to the chicken house of the injured party and carried the chickens away. The fact that the only direct testimony came from the accomplice did not make it necessary to charge on circumstantial evidence. Branch's Annotated Penal Code, sec. 1874; McKinney v. State, 48 Texas Crim. Rep., 402, 88 S. W., 1012. In determining the effect of the argument it is proper to look to the facts and circumstances in evidence. Silver v. State, 110 Texas Crim. Rep., 512, 9 S. W. (2d) 358. Looking to the record, we find that the uncontroverted evidence of guilt is plain. The stolen chickens were discovered in appellant's garage the day after they were taken. Mr. Craddock, the owner of the chickens, positively identified the chickens as being his property. On the day the chickens were stolen appellant and Jack Fancher, the accomplice witness, were seen by witnesses in appellant's automobile about two miles from the scene of the theft, with some chickens in the car. The accomplice witness testified that he and appellant stole the chickens and placed them in appellant's garage. Appellant offered no testimony. We think it is clear that the argument could not have contributed to the assessment of a penalty in excess of the minimum. The evidence of guilt being plain and uncontradicted, the opinion is expressed that we would not be warranted in predicating a reversal of the judgment upon the remarks under consideration.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.