UNITED STATES, Appellee

v

JOSEPH DANIEL MORRISON, Jr., Boatswain's Mate
First Class, U. S. Navy, Appellant

10 USCMA 525, 28 CMR 91

No. 12,837

Decided July 2, 1959

*Fred W. Shields, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Major E. W. Johnson,* USMC.

*Major Ted C. Collins,* USMC, argued the cause for Appellee, United States.

GEORGE W. LATIMER, Judge:

### I

The locale of the offense with which we are concerned in this appeal was the Naval YMCA Building in Norfolk, Virginia. A member of a Navy Shore Patrol whose duty it was to keep order in the building was walking through the hallway when he heard noises emanating from a particular room and, after listening for a moment or two, he suspected that an offense was being committed. He returned to the main desk on the first floor and checked the register. When he learned the room was occupied by Naval personnel, he obtained a passkey and, in the company of another shore patrolman, returned to the room and opened the door. They observed the accused and another member of the Navy engaged in an act of sodomy. The two offenders were thereupon apprehended for the commission of the offense. One shore patrolman and the accused started out of the room while the other offender was getting dressed, and when the accused reached a point in the hall he made a statement to the shore patrolman which, as quoted by two witnesses was either, "How much will it take for you guys to forget what you have just seen" or "How much would it take for . . . [you] to forget the apprehension—to forget about it." One patrolman replied, "We are not forgetting nothing." Thereafter the accused was taken to Shore Patrol Headquarters. Subsequently he was brought to trial before a general court-martial on a charge of bribery, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and an earlier and unrelated offense not pertinent to our inquiry, which latter conviction has been set aside by the board of review. At the trial of the case, the law officer refused to allow the Government to introduce any evidence as to the sodomy for which accused was apprehended in the YMCA room, for the reason that he found the search was illegal. However, he permitted the prosecution to show the facts relevant to the bribery charge,

and the accused was found guilty of that particular offense. A board of review affirmed that conviction, and we granted accused's petition for review to determine two issues, namely, whether the law officer erred in overruling defense counsel's objection to the introduction of evidence on the bribery specification because of the prior unlawful search and, second, whether the evidence is sufficient in law to support the findings.

### II

The question posed by the first issue is whether evidence of an independent offense committed during a search or immediately thereafter is admissible in evidence when the search is found to have been illegal. We are convinced the answer must be in the affirmative. While evidence obtained as a result of an illegal search or seizure is inadmissible, that principle applies to the evidence obtained by the search or any derivative evidence found by leads from the illegally obtained information. It has no application to an offense which is committed after the search is over and is in no way dependent upon the evidence obtained as a result of the search. Of course, it may well be, as argued by defense counsel, that the subsequent crime would not have been committed but for the illegal act of the Government agents. But that assertion overlooks entirely the rationale underlying the rule which prevents the prosecution from using evidence acquired illegally.

Generally speaking, the reasons for barring testimony obtained as a result of an unlawful search and seizure are to protect an accused in the enjoyment of his constitutional right and to prevent the Government from benefiting from its own wrong. In the case at bar, that principle was applied and the evidence obtained as a result of the illegal search was not permitted to be made the basis for conviction of the offense observed—in fact, accused was not tried for that sodomy. But the means employed by courts to protect a

person against unreasonable searches cannot be extended to pardon an offender from subsequent separate and distinct crimes. There is no constitutional or statutory provision or policy reason which should deny to the Government the right to prove a separate offense when none of the evidence is illegally obtained. Here the agent erred in going into the room, but he in no way learned of the bribery offense through his search. This crime came into existence solely through the machinations of the accused, and all the agent did was listen. The Government relied upon a testimonial utterance which was neither induced by interrogations nor by incriminating circumstances which influence persons to tell all because they have been caught in a criminal act. When placed in proper perspective, this is not a case where an accused admits or confesses to a crime because agents of the Government can display illegally obtained evidence and use it as a coercive measure or scheme to obtain an incriminating statement. Neither is it a situation where the illegally obtained evidence furnishes leads to other incriminating facts. On the contrary, this offense was nonexistent at the time of the search, and it was committed only because the accused sought to corrupt an official who was in the performance of his duties. None of the testimony used by the prosecution to prove the crime was disclosed by the illegal entry and, accordingly, there was no evidence to be suppressed. Certainly, no case has been found which extends the rule of illegal searches and seizures to bar testimony of a new offense not uncovered by the illegal search, and we are not disposed to extend the rule beyond its present limits.

## III

The second issue has to do with the alleged insufficiency of the evidence. The argument by appellant is twofold. First, it is asserted that no crime was committed because the illegality of the search barred conviction of the accused of the sodomy offense and thus he had no benefit to gain from a bribe. Second, it is contended there was no offer made within the fair meaning of the

**528**

term as used in the Federal statute. We treat these arguments seriatim.

As to the first assertion, it matters not what the final outcome of a prosecution might be or what ██ accused, in fact, might have gained. When he made his statement he was hoping to escape prosecution, and that is sufficient to support a finding he was attempting to influence the shore patrolman's action. Had he been successful in his venture, he would have received a distinct benefit as the legality of the search would never have been tested, for the incident would not have been reported. There are authorities which support this general proposition, and we refer to three which we believe to be appropriate.

In Mays v United States, 289 Fed 486 (CA 4th Cir) (1923), the accused was convicted of attempting to bribe an officer of the Internal Revenue Service. He was apprehended operating a still, and he offered the arresting officer one hundred dollars to "turn him loose." He appealed from his conviction for bribery, inter alia, on the basis that he had not been found guilty of the liquor violation. The court in that instance held there was no merit to his contention that he was not guilty of bribery because he had not been found guilty of the offense for which the arrest was made. There—as here—the second offense was completed before any action moving toward a conviction on the first crime could be taken and certainly a favorable outcome on the trial of the original misbehavior would not revert back and exculpate the attempt to bribe.

The Court of Criminal Appeals, in Goldsberry v State, 92 Tex Cr 108, 242 SW 221 (1922), made the following significant statement:

"There is another view of the matter. Whether the indictment later returned against appellant based on the possession of such liquor was good or bad, and whether the law under which the search warrant was issued be later repealed or not, or whether same be then constitutional or not, is not a matter which can be raised

by the appellant. Florez v State, 11 Tex App 102; Moseley v State, 25 Tex App 515, 8 SW 652; Smalley v State, 59 Tex Cr 95, 127 SW 225. The question of the criminality of the act of the accused, whose bribe or offer thereof be under investigation, may not be shifted to the question of the regularity of the issuance of the capias or the search warrant, or the constitutionality of the law under which the officer was acting."

In Kemler v United States, 133 F2d 235 (1942), the Court of Appeals for the First Circuit set out the reasons why the bribery offense was committed, regardless of whether the accused, after making the illegal offer, discovered he was mistaken in believing there was an occasion for making it. The court there stated:

"The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute."

In the case at bar, the accused had committed an offense and, for all he knew, would be punished for its commission. He sought to gain the advantage of not being prosecuted and to be released from custody of the arresting officer. In order to avoid any further steps which might lead to a conviction, he initiated action to corrupt an official of the Government and that is the evil sought to be prevented. The mere fact that subsequent events disclosed he need not have made the attempt is of no importance, for his crime was complete prior to the time he learned his misbehavior was unnecessary. He had the requisite criminal intent, and an offer, if one was made, to gain favorable consideration of a duly constituted official with authority to act, furnishes the necessary supporting evidence for the crime.

### IV

This brings us to the really critical issue of this case, and that is whether or not the accused made an offer within the meaning of the applicable Federal statute. This prosecution was instituted under Article 134 of the Code, supra, and the offense of bribery with which we are concerned is defined in 18 USC § 201. Insofar as relevant, that statute provides:

**"Offer to officer or other person**

"Whoever promises, offers, or gives any money or thing of value, . . . to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency . . . with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which by law may be brought before him in his official capacity, or in his place of trust or profit, . . . to induce him to do or omit to do any act in violation of his lawful duty, shall be . . . [punished]."

A reading of the section shows that an offer of something of value to influence official action is all that is necessary to support a conviction. And the great weight of authority is to that effect. An offer need not be stated in express language, but from its content it must be reasonably

inferable that the accused was presenting something of value for acceptance or rejection by the officer. The dictionary definition of offer is to present for acceptance or rejection. Accordingly, the language used by the alleged offerer should encompass some sort of proposal to pay something of value which without more one willing to be bribed could agree to accept. While an offer need not be accepted by the person importuned and while a consideration need not pass between the parties, the language used should be adequate to show a presentment for acceptance. A person may probe to ascertain whether an offer should be made without committing the offense of bribery unless the statute prohibits inquiries, which apparently it does not. There may be an indefinite line of departure between the preliminary matters which are taken by one intending to bribe and the actual offer of something of value but, unless the language used shows the latter area has been reached, the offense is incomplete. In the case at bar, the intent to bribe is shown adequately and the passing of something of value was in the mind of the accused, but difficulty is encountered in finding one essential element of the offense because the statement is in the form of an interrogation and is only preliminary to an offer—in no fashion had accused manifested by words or gestures to the shore patrolman he would pay in order to influence his official action. By way of illustrating the point, if anything of value was offered to the shore patrolman by some words or act, he could have succumbed and accepted the proposal. But words indicating an acceptance by him would have been meaningless, for the statement was no more than an inquiry testing the patrolman's integrity. Something further had to be said or done by the accused before the offering stage could be reached. From the foregoing reasoning, it is not to be inferred that an offer cannot be framed in the form of a question, but the statement, if made in that way, must be coupled with some act or phrased in language which when construed reasonably is an actual offer.

530

In the cases cited by the Government to support its position, we find a variety of situations in which the statement made by the accused had sufficient content to be an offer both in law and fact. In Fenwick v State, 200 Ind 460, 164 NE 632 (1904), the accused made the following statement: "Harry, I have got fifty for you, if you make this jury right." In People v Vincilione, 17 Cal App 513, 120 Pac 438 (1911), the accused stated, "Fred, I am going to ask for a dismissal in this case. When I get my fee from these people, I will split it with you." In Goldsberry v State, supra, the defendant indicated she would "make it right" if the official would "let everything go," and said: "How would a thousand dollars look to you?" Lastly, in Handley v State, 69 Okla Cr 321, 102 P2d 947 (1940), the defendant stated, "If you will let me operate a wholesale liquor business . . . I'll pay you the first of every month enough money to satisfy you, the more I make the more I can pay you." In each of these instances, the official, by simply replying, "I will accept your proposition," would have created some deal which was recognizable, at least, as an understanding that there would be a payoff. No such situation prevails here for the same reply by the shore patrolman would not have framed up any agreement.

While we are convinced that no actual tender of money or a thing of value is necessary to establish bribery and that the formalities of civilian contract law are not the touchstone for the crime, we nevertheless believe the words uttered should be reasonably construable as suggesting the offerer had fixed his intent to pass the property mentioned. In this instance, the intent to pay was conditioned upon some expression by the patrolmen that they would consider becoming a party to the criminal transaction. From the foregoing, it seems to us the Government is one step short in its proof of the offense.

We have found one case which is on all fours with the one at bar. In Evans v State, 48 Tex Cr 620, 89 SW 1080, the Court of Criminal Appeals was con-

fronted with a situation where the defendant had been apprehended, and he made the following statement: "How much will you take to turn me loose and let me go?" The court in that case held:

> "It is contended that the language imputed to appellant is not sufficient to bring it within the denunciation of the statute punishing an offer to bribe the officer to make escape. We are of opinion this position is correct. We do not think this remark was an effort directly or indirectly to bribe the officer. He may have been feeling his way to see if the officer would accept a bribe, but none was offered. No sum was offered, nor any inducement held out farther than to ask the question. This occurred within a short distance of the jail, and the officer replied that he was an officer, and he must not talk that way to him; and this settled the incident. The prisoner was placed in jail. The question, as put under the facts of this case, we do not believe to be a sufficient predicate for prosecution for an offer to bribe an officer."

The language used in this case, as in that one, seems to be no more than an inquiry by the accused as to whether the officers might be bribed, and the reply was that they could not. While the question may have been an affront to the integrity of the shore patrolman, it was preliminary to a bribe, and it lacked the essentials necessary to constitute an offer.

For the foregoing reasons, we believe the evidence insufficient to support the findings. The decision of the board of review is, therefore, reversed and the case is dismissed.

FERGUSON, Judge (concurring in the result):

I concur in the result. I agree unreservedly with the author of the principal opinion that the evidence in this case is insufficient, as a matter of law, to establish that the accused made an offer of "any money or thing of value" to the shore patrolman within the meaning of 18 USC § 201. I reach this result even if I assume that the evidence of the accused's statement was untainted by the earlier illegal search. Thus, it is unnecessary to decide the issue of the effect of that quest, and I prefer to express no view thereon in this case.

QUINN, Chief Judge (dissenting):

In my opinion, the accused's statement was an offer within the meaning of the bribery statute. True, no specific amount was mentioned but there need be no agreement on the amount to constitute the offense. As the principal opinion admits, we are not dealing with contract law, and the necessity of a meeting of the minds on the terms of the offer. The majority clearly imply that if the accused offered the arresting officer a dollar "to forget" the matter, the offense would be established despite the fact that the offer would be patently inadequate. The accused's words hold forth a promise of a much greater consideration than that. I would affirm the decision of the board of review.